China v. Morrison-Foerster China v. Morrison-Foerster China v. Morrison-Foerster China v. Morrison-Foster One, on the date that the money was sent, and within a few days thereafter, they should have made sure that the shareholder records of the corporation which they had were properly reflected who the shareholder was. On the very next day, they should have, they knew there was another contribution that was due that was not paid, and yet they continued to assist the Liberty defendants in controlling the corporation when they hadn't fulfilled their obligations to make their contribution. So how's that fraught? I don't quite understand that. Well, they certainly knew in October that Liberty didn't intend to honor its obligation. They knew in November. They knew in December. They knew in January. So what you're saying is that their continued representation of Liberty Mutual and China Energy, that continued representation was fraudulent or gave the impression to your client, to the corporation or whoever it is, that this was just all fraudulent. Yes. In fact, they continued their representation. Yes, and continued to send out documents to representatives of Asia Energy saying, you're a director, things are going along. In December, they sent out a document saying, here's who our directors are, Marie, Collins, Dickert, Carlson. There was a resolution drafted which said that Carlson was being elected as a director and president. That's three months later. They're not only knowledgeable about the fraud, they're assisting in the perpetration of the fraud. And that is the fraudulent conduct to Liberty Energy China, the corporation. They had a duty to protect the corporation. Who relied on this fraudulent conduct? The corporation. Corporation. Sure did. And it went ahead spending the money. If they knew there was a fraud being perpetrated, it would have been stopped and the half a million dollars would still be there. I think. Good afternoon, Your Honor. Ralph Aldridge for Morris & Forrester. Let me address the questions that were asked. First, the counsel posed the question, Morris & Forrester is asking what it should have done here. No. Morris & Forrester knew what it was supposed to do and it did what it was supposed to do. What Morris & Forrester is asking in this case is, what did Morris & Forrester do or didn't do that breached any duty here and that caused the alleged damages that are claimed here? And that's the problem with this case because there isn't an answer to that and you won't get an answer from counsel to that. We haven't had one in all of the pleadings so far. Let me, this is a pleadings case and I agree, you have to go right to the complaint. If you go to the gravamen of the complaint, it is the count eight, account for a breach of a joint venture contract against the Liberty defendants. Now remember, this is a joint venture contract between Brunson & Murray on the one hand and the Liberty Mutual people on the other hand. It's not a joint venture arrangement of the corporation. It doesn't, the corporation is simply a vehicle through which this joint venture is to be done. The obligations are from the Liberty people on the one hand to the Brunson & Murray people on the other. And that is the allegation in count eight. It says they agreed to form a joint venture, that the parties agreed to use Liberty Energy as the vehicle and that plaintiffs delegated their right to control the Liberty defendants, to the Liberty defendants, I'm sorry, in reliance upon their representations. So they admit that as part of this, there was going to be a corporation formed. They understood that Morrison & Forrester represented the Liberty Mutual people. That's also alleged in the complaint. They understood that Morrison & Forrester, as counsel to the Liberty Mutual people, was going to form the corporation. They weren't counsel to the corporation, couldn't be until it was formed. Somebody had to form it. Somebody had to be the initial shareholders. That was Liberty Mutual. That was the understanding. They were going to be the ones who, not only were the shareholders and officers, they were going to control the corporation. That's alleged in the joint venture cause of action. And there's nothing contrary to that allegation anywhere else, but that's the place where it appears. So everything was done the way it was intended and expected to be done. There was a single share that was issued to Liberty Mutual. I use that term broadly to refer to the Liberty Mutual people. And there was a director who was appointed, a single director, Mr. Tuttle, who was in that group. Now, obviously, ultimately there would have been more. There would have been other shares issued when both sides put in their contributions and those contributions were recognized by the issuance of shares. That didn't happen. But there was no deadline by which that was to happen. It was something that was simply going to happen in the course of this joint venture. So the suggestion somehow that because that didn't happen in September or it didn't happen in October of 1999 or it didn't happen in November of 1990, and therefore you should conclude that the Liberty Mutual people never intended to honor their obligation to make that commitment, is absurd. It's simply an inference that is drawn, the worst possible inference that could be drawn, and California law makes it very clear that you can't get promissory fraud by simply saying you didn't perform and therefore we can draw the inference of fraud. So that's where the fraud comes into this case. So then you have to keep asking, what is it that Morris and Forrester did? Well, we can be sure of the things that they say Morris and Forrester didn't do. Nowhere in this 45-page complaint is there a single allegation that Morris and Forrester ever made any affirmative misrepresentation to anybody. What they say is that the Liberty Mutual people made some affirmative representations about the fact that Mr. Murray, about Mr. Murray being elected a director. They don't say Morris and made that representation. I think I heard that this morning, but it's not in the complaint and it wouldn't be true. They also, they say Morris and sent Mr. Murray an officer and director questionnaire, which would have been appropriate if at some point he was going to be elected as a director. But that's certainly not a representation that he had been elected as a director. That representation came from the Liberty Mutual people and there's no allegation that Morris and even knew about that. Then they say, well, Morris and had an obligation to the corporation somehow to disclose this information, to disclose that the contribution hadn't been made  and to disclose that shares actually hadn't been issued to the Brunson and Murray people in exchange for their contribution. Well, what you have to look at is the law, and you have to look at whether or not there was a duty to disclose this information. If Morris and Forrester had a fiduciary duty to these individuals, Brunson and Murray, then it had an obligation to disclose that information to them. If it doesn't have a fiduciary duty, it has no obligation. Now, there's a case that is really as close as you can come to addressing this very situation under California law, and that's the Skarbrevik case. We've cited it in our briefs. They've never even mentioned the case. They don't even talk about the case anywhere in their briefs. But that case is a case where you had a trial and a corporate attorney was found to have conspired with some shareholders to defraud other shareholders. The shareholder who was the plaintiff was defrauded. They won a jury verdict. It was determined that there was fraud, intentional fraud and concealment on the part of the lawyer. But there was no affirmative misrepresentation by the lawyer. It was all constructive fraud. It was all failure to disclose this pattern of fraud that was being conducted by the other people that he represented, the other shareholders, at the same time that he was counsel for the corporation. And the Court of Appeal found that the verdict had to be thrown out because he had no duty to make those disclosures. And the Court made it very clear this is not a case where the lawyer made any misrepresentations. That's this case as well. And the Court also said this is not a case where the lawyer was an officer or a director of the corporation and had some obligation to the corporation as a fiduciary beyond his actions as an attorney. And that's exactly the same situation here. And they said even if he had represented both one set of shareholders and the corporation at the same time, it wouldn't change the result. And that's exactly the situation here. Now, in that case, they went through a very lengthy and careful discussion of the rules of ethics. And the rules of ethics, which are embodied in California law in the rules of professional conduct, make it very clear not only doesn't a lawyer have a duty to disclose this information to these people he doesn't represent under those circumstances, his duty, in fact, is to maintain the confidences and the loyalty of the clients he does represent under those circumstances. So when you look at the code at section 3600, what it says is that if you're a corporate lawyer, I'm paraphrasing here, but I've got it, you're a corporate lawyer, and you really have the worst possible situation come up. In other words, you've got a situation where someone is violating a law who's a representative of the corporation in a way that ultimately might redound to the detriment of the corporation. That's not the case here. That's the extreme case. In that extreme case, there are a number of things you can do and should do. But the first thing you should not do is violate your obligation under business and professions code section 6008E, which is your duty to maintain the confidences of your client in secret. Section 6008E goes beyond the attorney-client privilege even, and the law is quite clear on that. You have to maintain those confidences. That's your first order of business. So not only don't you have a duty to make disclosures in a situation like that, you would be violating your duties as a lawyer if you'd made those disclosures. Now, that's your duty of confidentiality. You also have a duty of loyalty to your clients, and that duty of loyalty precludes you from taking any action, whether it's a disclosure or anything else, that would promote the case of an adversary, potential adversary against your client. Once again, if you take this in its darkest argument, this is a case where if Morrison knew that there was some fraud on the part of the Liberty Mutual people and that that fraud was ultimately going to potentially open them up to exposure, maybe even the corporation up to exposure to these other shareholders, then it has a duty to sit down with them and talk to them about the potential ramifications and so forth. But it also has a duty of loyalty not to do anything, disclosure or anything else, that might prejudice that client's position vis-à-vis that adversary. They cited the case that I think makes that very clear, the Flat v. Superior Court case, where it's a common situation where a lawyer has somebody come in for a consultation and there's a recognition that in consultation you actually develop some attorney-client privilege when they tell you about their case, enough normally to create an obligation to tell them if you're not going to take the case that they've got statute of limitations that they have to consider and that there are they should consult with another lawyer, and that if you don't do those things you could be subject to professional liability for failing to act appropriately with respect to that prospective client. Well, in the Flat case, came in, had the consultation about this case that was pending. The lawyer goes off after the consultation, finds out the case is pending against one of his clients, one of the clients of his firm. And at that point he does not say anything to this second client about the possibility of consulting with another lawyer or about the possibility of a statute of limitations running. Held, that was appropriate. It would not have been appropriate for him to do anything to help that second person in view of the duty of loyalty that he had to his first client. Put those facts into this bottle, and what you have is not only the situation, as Judge Armstrong properly found, that there's no duty and there's no connection between the claims of damage and anything Morrison did or didn't do. I mean, at the most they would say Morrison should have resigned at some point. That has nothing to do with the damage that they allegedly suffered because Liberty Mutual didn't go through with the joint venture. And that's what Judge Armstrong found. There's no duty. There's no connection. There's no reliance. There's no connection with the damages. And I submit the other thing is that not only is there no duty, but you would have to conclude that if Morrison Forrester did the things that they claim it should have done, it would have been violating its ethical duties to its clients. Let me ask you, I have one just one minor question for you. You know, at the end of the district court's order, the district court considered whether or not it should have granted leave to amend. Yes. And, you know, on a Rule 12b-6, you know, that's pretty customary, I would say. You know, okay, you know, make it this time. I'm going to give you one chance here. Clean up the complaint. Yes. She didn't do that here. And she was careful to say there's a reason why she didn't do that, because you can't get a free pass at an amendment by making an argument somehow that you could come in with inconsistent allegations now and build a new case around inconsistent allegations. And you also can't get a chance at a new amendment by saying I can come in and just give you some additional conclusions that are inconsistent with the pleadings and the allegations that I've already made. And that's what she concluded was the case here. And I think it's one of those situations where when you do a 45-page complaint, you run the risk that you have expressed the allegations about the case and about the claims and about the duties that are claimed and the damages and what is alleged to be reliance in ways that you can't go back by amendment later and change. They've already they had ten clauses of action here, 45 pages, 155-some allegations, separate allegations. They put it out in all in great, great detail, and they haven't even claimed in this court that there's some way that they could go back and tweak those allegations and make a case. They certainly didn't below either. Thank you. Thank you. Handling that last issue about amendment, didn't handle it below. We didn't have much of an opportunity. The Court didn't allow argument, and in fact, there was no suggestion at any point that amendment wouldn't be allowed. I certainly believe that at a minimum, the Court ought to send this back and allow an amendment to plead more specifically if they feel that that is indeed the deficiency. As I noticed, I read your opposition to the motion to dismiss in the district court. Yes. I didn't see anything. Usually at the end of an opposition to a motion to dismiss, the party usually lay out, well, you know, Judge, if you're going to grant this motion to dismiss, I want leave to amend, and I'm going to amend along these following lines. So, you know, give me a chance. I didn't see that in yours. And I'm not suggesting you missed it. We may have. It wasn't there. It wasn't there. I agree. However, I would – well, we felt very confident that we had pleaded. Obviously, because as Counsel just said, you have 45 pages, 100 and some odd paragraphs, and instead of a short and plain statement, you have a detailed, highly fact-intensive complaint. Yes. And now we have a much smaller case in light of the fact that there now is only one defendant and only two claims left, and an amended complaint would be much shorter and much more succinct and much more focused. But as to the fraud issue, there is fraud by affirmative misrepresentation, and there's fraud by failure to disclose. And I think Counsel failed to suggest or maybe overstated the fact that, well, there was no misrepresentation by MOFA. Well, in fact, there was. They knew the true state of facts because they were continuing to represent both Liberty Energy and Liberty Mutual while this scam was going on. And the fact is they knew Liberty Mutual had not made its contribution. They knew that there was not one shareholder, but there was now a majority shareholder who had contributed $500,000. They knew or should have known the subscription agreement was, in fact, accepted and the money was taken. With that, unless the Court has some questions, I thank the Court for its time. All right. Thank you. And we've listened to almost four hours and 13 minutes of argument. All these cases we've heard today are submitted. Thank you. All rise. The Court for this session now stands adjourned. adjourned. adjourned. adjourned.
judges: Pregerson, Beam, Paez